**C.O. LAW, APC**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
2404 Broadway, Suite 150
San Diego, California 92102
Telephone: (619) 356-8960
Facsimile:  (619) 330-7610

**OLYMPUS LAW CORP**
George C. Panagiotou, Esq. (SBN: 263172)
george@olympuslawcorp.com
3148 Midway Dr., Suite 202
San Diego, California 92110
Telephone: (858) 300-0033

*Attorneys for Plaintiff,*
Miguel Sepulveda Sr.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MIGUEL SEPULVEDA SR.,** | **Case No.:** '19CV0585 L   AGS |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | **1.) THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND** |
| **AMERIMARK DIRECT, LLC, FIRST SAVINGS CREDIT CARD, ARMY AND AIR FORCE EXCHANGE SERVICE, and EXPERIAN INFORMATION SOLUTIONS, INC.,** | **2.) CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.** |
| **Defendants.** | **JURY TRIAL DEMANDED** |

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

### INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff **MIGUEL SEPULVEDA SR.** ("Plaintiff"), through his attorneys, brings this lawsuit to challenge the actions of Defendants **AMERIMARK DIRECT, LLC ("AmeriMark," "Furnisher-Defendants," or "Defendants"), FIRST SAVINGS CREDIT CARD ("FSCC," "Furnisher-Defendants," or "Defendants"), ARMY AND AIR FORCE EXCHANGE SERVICE ("AAFES," "Furnisher-Defendants," or "Defendants"), and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian," the "Credit Bureau," or "Defendants")** with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit report, as that term is defined by 15 U.S.C. § 1681a(g) and Defendant's failure to correct such, which Defendant knew or should have known was erroneous and which caused Plaintiff damages.

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

3. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

6. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

9. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCRAA").

10. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

11. Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Diego, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

**PARTIES**

12. Plaintiff is a natural person who resides in the City of San Diego, County of San Diego, in the State of California.  In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

13. Defendant AmeriMark is a corporation whose primary corporate address is in the City of Cleveland, in the State of Ohio, and is authorized to do business in the State of California.

14. Defendant FSCC is a corporation whose primary corporate address is in the City of Sioux Falls, in the State of South Dakota, and is authorized to do business in the State of California.

15. Defendant AAFES is an entity whose primary address is in the City of Dallas, in the State of Texas, and is authorized to do business in the State of California.

16. Defendant Experian is a corporation whose primary corporate address is in the City of Costa Mesa, in the State of California, and is authorized to do business in the State of California.

17. Furnisher-Defendants are each a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

18. Plaintiff is informed and believes, and thereon alleges, that Furnisher-Defendants in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and are each therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

19. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3.

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

20. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was reported by Defendants regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

### GENERAL ALLEGATIONS

21. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

22. Furthermore, Defendant conducted business within the State of California at all times relevant.

23. On or about November 14, 2017, Plaintiff filed for a no-asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of California in San Diego. Plaintiff's case was assigned Case Number 17-06913 (the "Bankruptcy").[1]

24. Plaintiff's Bankruptcy successfully discharged on February 13, 2018, and Plaintiff's accounts and debts with Furnisher-Defendants were included in Plaintiff's discharge.

25. However, Furnisher-Defendants reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged on Plaintiff's credit reports.

///

///

---

[1] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See*, *Atwood v. Chase Manahttan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

26. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[2]

27. Upon information and belief, Defendants have adopted the *Metro 2 Format Manual* as its standard instruction book in respect to credit reporting.

28. The CII status field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

29. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

30. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

31. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

32. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

33. Once a Chapter 7 Bankruptcy is successfully completed, furnishers for unsecured accounts included in the bankruptcy, including Furnisher-Defendants' respective accounts, are instructed to report the CII status as "Discharged/completed through BK Chapter 7", report "Current Balance", "Scheduled Monthly Payment Amount", and "Amount Past Due" as "Zero"

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

---

[2] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

(i.e. $0), and report "D", i.e. "no data", in the "Payment History" section.

34. Moreover, as a result of a major class action settlement in 2008, the three nationwide CRAs, including Experian, have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[3] The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or placed in collection debts that in fact have been discharged in bankruptcy.

35. These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—*and* show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own credit files when a consumer's prebankruptcy debt has not in fact been discharged.

///

///

///

---

[3] *White v. Experian Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. Equifax Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. Equifax Info. Serv.*, L.L.C., Case No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

36. These revised procedures and assumptions were applied both retroactively *and* prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

37. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[4] Indeed, the frequency of cases in which debtors had complained of the failure to properly report accounts included in bankruptcy has led one court to observe the "sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[5]

38. However, despite knowledge Furnisher-Defendants consistently followed faulty and deceptive procedures in their credit reporting practices for post-bankruptcy consumers like Plaintiff, the Credit Bureaus have continued to fail to adopt reasonable procedures to eliminate the reporting errors that it knew or should have reasonably been aware of.

---

[4] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. Equifax Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

[5] *Norman v. Applied Card Sys.* (*In re Norman*), 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006).

39. Moreover, Experian reported the Bankruptcy in the "Public Records" section of their respective credit report for Plaintiff at all times relevant, including the filing and discharge date. This further bolsters the claim that Experian failed to adopt reasonable procedures to ensure maximum possible accuracy because Furnisher-Defendants' respective accounts reported as being opened prior to the filing of the Bankruptcy.

40. The FCRA imposes obligations on CRAs relating to consumers who have filed petitions for bankruptcy that require such CRAs to report the particular chapter of Title 11 under which the petition was filed and that limit the amount of time they may report bankruptcy information to a maximum of ten years. 15 U.S.C. §§ 1681c. Nothing in this statutory provision of the FCRA suggests that there is an exception to a CRAs standard obligation to employ reasonable procedures to ensure maximum possible accuracy for bankruptcy-related information.[6]

41. Accordingly, the Credit Bureaus' conduct was willful and reckless disregard of their rights and obligations under the FCRA.

42. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the "CII" credit reporting field in Plaintiff's Experian Credit Report in respect to the Furnisher-Defendants' accounts successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

///

///

---

[6] *See also* 16 C.F.R. 600 app. § 607(3)(A)(6); *id.* § 607(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid)."); *id.* § 607(3)(F)(1) ("A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts (e.g., by requiring its creditors to notify the credit bureau when a previously past due account has been paid or discharged in bankruptcy)[.]"). *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

43. Instead, Defendants reported that the *current* (pay) status of the debts were delinquent, "Charged Off" i.e. still legally collectable, "Past Due", or otherwise still legally owed in their pre-Bankruptcy form with outstanding balances owing as opposed to "Discharged/included in Bankruptcy" with a $0 balance.

44. The failure to report the correct status of "Discharged in Bankruptcy" with a $0 balance owed inaccurately and misleadingly suggested that Plaintiff still has a personal legal responsibility to pay the alleged debts to Furnisher-Defendants, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

45. The "Charge Off" and past due status notations by Furnisher-Defendants post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff was still legally liable to repay the alleged debt, incurred new debt during the Bankruptcy, or that Plaintiff reaffirmed the debt notwithstanding the discharge because Furnisher-Defendants' reporting deviated from Metro 2 reporting instructions in these respects.

46. However, Plaintiff did not incur new debt with Furnisher-Defendants during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with Furnisher-Defendants was discharged in the Bankruptcy.

47. Accordingly, pursuant to the terms of the Bankruptcy Orders, it was inaccurate and materially misleading for Furnisher-Defendants to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

48. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on February 13, 2018. Furnisher-Defendants received notice of the successful discharge through the Bankruptcy Noticing Center on or about February 13, 2018 by first class mail through the Bankruptcy Noticing Center.

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

49. Rather than using the bankruptcy information sent specifically to Furnisher-Defendants to accurately update Plaintiff's Account on Plaintiff's Experian Credit Report, which Furnisher-Defendants knew or should have known existed, Furnisher-Defendants continued reporting inaccurately on Plaintiff's credit reports.

50. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores for consumers.

51. Moreover, the FCRA and CCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[7]

52. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers like Furnisher-Defendants would adhere to the Metro 2 format, would view the reporting of accounts included in the Bankruptcy in their delinquent pre-bankruptcy form more negatively than if the accounts reported accurately.

///

///

///

---

[7] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

53. In respect to their FCRA investigation, Plaintiff alleges Furnisher-Defendants, rather than train its employees how to properly review and investigate disputes, are generally expected to simply confirm whatever information being reported is accurate, rather than conducting an actual reasonable investigation.

54. Similarly, Plaintiff alleges the Credit Bureaus' employees have a policy of simply parroting whatever information is provided by furnishers rather than conducting reasonable reinvestigations under the FCRA and CCRAA.

55. This is because the investigation and reinvestigations conducted by the Defendants occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas. This atmosphere is conducive to a speed-minded dispute operator failing to consider, or not looking for, information that is relevant to the consumer's dispute.

56. Such conduct by Defendants is willful and reckless.

57. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they continued reporting patently inaccurate and materially misleading information after Plaintiff formally disputed the reporting. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

58. As a direct and proximate result of the derogatory information furnished and reported by Defendants, Plaintiff has sustained actual damages including emotional distress, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, was impeded in seeking necessary products and services from vendors, and damages to her credit rating due to Defendants' inaccurate reporting.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

59. This has made Plaintiff unable and therefore averse to apply for credit because her credit score remains extremely low.

60. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff has spent many hours and associated costs reviewing credit reports, disputing the incorrect information furnished by Defendants via certified mail, and incurred attorneys' fees and such further expenses in an amount to be determined at trial.

### AMERIMARK

### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 411008* (THE "ACCOUNT")

61. In an Experian Credit Report dated November 1, 2018, AmeriMark reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

   • Status: Account charged off. $310 written off.

62. There was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this Account was included in or discharged in Plaintiff's Bankruptcy.

63. On or about November 7, 2018, Plaintiff disputed AmeriMark's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by AmeriMark.

64. Specifically, Plaintiff sent a letter, via certified mail, to Experian (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions.

65. Specifically, the Dispute Letter expressed:

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

| Consumer Dispute: | |
|---|---|
| | • This account was included and discharged in my Chapter 7 Bankruptcy, which was filed on 11/14/2017 and discharged on 02/13/2018, bearing docket No. 17-06913-MM7 in the Southern District of California (San Diego). Accordingly, the scheduled payment amount, current balance, balloon payment, and amount past due on this account should be "$0" and the status should be reporting as "discharged through bankruptcy" or the equivalent. This account should also be reported as "closed" as opposed to "open." Moreover, there should be no delinquencies or major delinquencies reporting after the filing date of the bankruptcy in the history of this account Any duplicative reporting of this account in my credit history should be deleted as well. |

66. The Dispute Letter further requested that the Experian and AmeriMark:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.

- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

67. Upon information and belief, Experian timely notified AmeriMark of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

68. AmeriMark was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

69. Experian was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

70. On or about December 21, 2018, Plaintiff received the results of AmeriMark and Experian's (re)investigations in the form of a letter from Experian with Plaintiff's updated credit report.

71. However, rather than remove the above derogatory information from Plaintiff's report, AmeriMark and Experian simply left derogatory information on Plaintiff's report.

72. Specifically, AmeriMark and Experian reported the following inaccurate and derogatory information on Plaintiff's credit in respect to the Account:

- Status: Account charged off. $310 written off.

73. Once again, there was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this Account was discharged in Plaintiff's Bankruptcy.

74. Experian did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3) or include Plaintiff's "Statement of Dispute" pursuant to 15 U.S.C. § 1681i(b).

75. Upon information and belief, Experian's reinvestigation was not reasonable. More specifically, Experian should have discovered from its records, including Plaintiff's official dispute letter, that the information AmeriMark was reporting was inaccurate and materially misleading. Experian could have easily ascertained that the AmeriMark account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, Experian conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

76. Such conduct by Experian is willful and reckless.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

77. Accordingly, Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

78. Further, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

79. Upon information and belief, AmeriMark's investigation was also not reasonable. More specifically, AmeriMark should have discovered from its records, including Plaintiff's official dispute letters, that the information AmeriMark was reporting was inaccurate and materially misleading. Specifically, AmeriMark could have simply reviewed the bankruptcy records discussed above and received by AmeriMark and recognized that their reporting of a Charged Off status and balance owing following the Bankruptcy was inaccurate, misleading, and outdated.

80. AmeriMark should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a $0 balance.

81. Accordingly, AmeriMark failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

    a. Failing to remove all of the disputed and incorrect information;

    b. Failing to update Plaintiff's Account (history); and

    c. Failing to notate, as required, Plaintiff's dispute.

82. Through this conduct, AmeriMark has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Experian, i.e. a consumer reporting agency, that AmeriMark knew or should known was inaccurate and materially misleading.

83. AmeriMark and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

84. Due to AmeriMark and Experian's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

85. Plaintiff's efforts to correct AmeriMark and Experian's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with AmeriMark and Experian were fruitless.

86. AmeriMark and Experian's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

87. AmeriMark and Experian's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, AmeriMark and Experian willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

88. AmeriMark and Experian's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

89. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, AmeriMark and Experian failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## FSCC

### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 543360* (THE "ACCOUNT")

90. In an Experian Credit Report dated November 1, 2018, FSCC reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Recent Balance: $901 as of Mar 2018.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

- Status: Account charged off. $901 past due as of Mar 2018.

91. There was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this Account was included in or discharged in Plaintiff's Bankruptcy.

92. On or about November 7, 2018, Plaintiff disputed FSCC's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by FSCC.

93. Specifically, Plaintiff sent a letter, via certified mail, to Experian (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions.

94. Specifically, the Dispute Letter expressed:

| Consumer Dispute: | |
|---|---|
| | • This account was included and discharged in my Chapter 7 Bankruptcy, which was filed on 11/14/2017 and discharged on 02/13/2018, bearing docket No. 17-06913-MM7 in the Southern District of California (San Diego). Accordingly, the scheduled payment amount, current balance, balloon payment, and amount past due on this account should be "$0" and the status should be reporting as "discharged through bankruptcy" or the equivalent. This account should also be reported as "closed" as opposed to "open." Moreover, there should be no delinquencies or major delinquencies reporting after the filing date of the bankruptcy in the history of this account Any duplicative reporting of this account in my credit history should be deleted as well. |

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

95. The Dispute Letter further requested that the Experian and FSCC:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.
- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

96. Upon information and belief, Experian timely notified FSCC of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

97. FSCC was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

98. Experian was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

99. On or about December 21, 2018, Plaintiff received the results of FSCC and Experian's (re)investigations in the form of a letter from Experian with Plaintiff's updated credit report.

100. However, rather than remove the above derogatory information from Plaintiff's report, FSCC and Experian simply left derogatory information on Plaintiff's report.

101. Specifically, FSCC and Experian reported the following inaccurate and derogatory information on Plaintiff's credit in respect to the Account:

- Recent Balance: $901 as of Mar 2018.
- Status: Account charged off. $901 past due as of Mar 2018.

102. Once again, there was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this Account was discharged in Plaintiff's Bankruptcy.

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

103. Experian did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3) or include Plaintiff's "Statement of Dispute" pursuant to 15 U.S.C. § 1681i(b).

104. Upon information and belief, Experian's reinvestigation was not reasonable. More specifically, Experian should have discovered from its records, including Plaintiff's official dispute letter, that the information FSCC was reporting was inaccurate and materially misleading. Experian could have easily ascertained that the FSCC account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, Experian conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

105. Such conduct by Experian is willful and reckless.

106. Accordingly, Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

107. Further, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

108. Upon information and belief, FSCC's investigation was also not reasonable. More specifically, FSCC should have discovered from its records, including Plaintiff's official dispute letters, that the information FSCC was reporting was inaccurate and materially misleading. Specifically, FSCC could have simply reviewed the bankruptcy records discussed above and received by FSCC and recognized that their reporting of a Charged Off status and balance owing following the Bankruptcy was inaccurate, misleading, and outdated.

109. FSCC should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a $0 balance.

110. Accordingly, FSCC failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b) by:

    a. Failing to remove all of the disputed and incorrect information;

    b. Failing to update Plaintiff's Account (history); and

    c. Failing to notate, as required, Plaintiff's dispute.

111. Through this conduct, FSCC has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Experian, i.e. a consumer reporting agency, that FSCC knew or should known was inaccurate and materially misleading.

112. FSCC and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

113. Due to FSCC and Experian's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

114. Plaintiff's efforts to correct FSCC and Experian's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with FSCC and Experian were fruitless.

115. FSCC and Experian's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

116. FSCC and Experian's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, FSCC and Experian willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

117. FSCC and Experian's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

118. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, FSCC and Experian failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## AAFES

### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 653002* (THE "ACCOUNT")

119. In an Experian Credit Report dated November 1, 2018, AAFES reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Recent Balance: $5,058 as of Dec 2018.
- Status: Collection account. $5,058 past due as of Dec 2018.

120. There was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this Account was included in or discharged in Plaintiff's Bankruptcy.

121. On or about November 7, 2018, Plaintiff disputed AAFES's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by AAFES.

122. Specifically, Plaintiff sent a letter, via certified mail, to Experian (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions.

123. Specifically, the Dispute Letter expressed:

///

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

| Consumer Dispute: | |
|---|---|
| | • This account was included and discharged in my Chapter 7 Bankruptcy, which was filed on 11/14/2017 and discharged on 02/13/2018, bearing docket No. 17-06913-MM7 in the Southern District of California (San Diego). Accordingly, the scheduled payment amount, current balance, balloon payment, and amount past due on this account should be "$0" and the status should be reporting as "discharged through bankruptcy" or the equivalent. This account should also be reported as "closed" as opposed to "open." Moreover, there should be no delinquencies or major delinquencies reporting after the filing date of the bankruptcy in the history of this account Any duplicative reporting of this account in my credit history should be deleted as well. |

124. The Dispute Letter further requested that the Experian and AAFES:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.

- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

125. Upon information and belief, Experian timely notified AAFES of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

126. AAFES was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

127. Experian was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

///

///

128. On or about December 21, 2018, Plaintiff received the results of AAFES and Experian's (re)investigations in the form of a letter from Experian with Plaintiff's updated credit report.

129. However, rather than remove the above derogatory information from Plaintiff's report, AAFES and Experian simply left derogatory information on Plaintiff's report.

130. Specifically, AAFES and Experian reported the following inaccurate and derogatory information on Plaintiff's credit in respect to the Account:

- Recent Balance: $5,058 as of Dec 2018.
- Status: Collection account. $5,058 past due as of Dec 2018.

131. Once again, there was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this Account was discharged in Plaintiff's Bankruptcy.

132. Experian did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3) or include Plaintiff's "Statement of Dispute" pursuant to 15 U.S.C. § 1681i(b).

133. Upon information and belief, Experian's reinvestigation was not reasonable. More specifically, Experian should have discovered from its records, including Plaintiff's official dispute letter, that the information AAFES was reporting was inaccurate and materially misleading. Experian could have easily ascertained that the AAFES account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, Experian conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

134. Such conduct by Experian is willful and reckless.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

135. Accordingly, Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

136. Further, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

137. Upon information and belief, AAFES's investigation was also not reasonable. More specifically, AAFES should have discovered from its records, including Plaintiff's official dispute letters, that the information AAFES was reporting was inaccurate and materially misleading. Specifically, AAFES could have simply reviewed the bankruptcy records discussed above and received by AAFES and recognized that their reporting of a Charged Off status and balance owing following the Bankruptcy was inaccurate, misleading, and outdated.

138. AAFES should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a $0 balance.

139. Accordingly, AAFES failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

    a. Failing to remove all of the disputed and incorrect information;

    b. Failing to update Plaintiff's Account (history); and

    c. Failing to notate, as required, Plaintiff's dispute.

140. Through this conduct, AAFES has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Experian, i.e. a consumer reporting agency, that AAFES knew or should known was inaccurate and materially misleading.

141. AAFES and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

142. Due to AAFES and Experian's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

143. Plaintiff's efforts to correct AAFES and Experian's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with AAFES and Experian were fruitless.

144. AAFES and Experian's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

145. AAFES and Experian's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, AAFES and Experian willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

146. AAFES and Experian's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

147. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, AAFES and Experian failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681 ET SEQ.

### [AGAINST ALL DEFENDANTS]

148. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

149. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

150. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

151. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

## COUNT II

## VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT CAL. CIV. CODE § 1785.1 ET SEQ.

### [AGAINST ALL DEFENDANTS]

152. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

153. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

154. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendants.

155. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Defendants, including punitive damages of $100-$5,000 per willful violation.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

156. Because Furnisher-Defendants are partnerships, corporations, associations, or other entities, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Furnisher-Defendants are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Thus, Furnisher-Defendants violated Cal. Civ. Code § 1785.25(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fess, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;

- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants; and

- Any and all other relief the Court deems just and proper.

Dated: March 29, 2019                    Respectfully submitted,

                                         **C.O. LAW, APC**


                                         By: /s/ Clark Ovruchesky
                                         CLARK OVRUCHESKY, ESQ.
                                         ATTORNEY FOR PLAINTIFF

### TRIAL BY JURY

157. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 29, 2019                    Respectfully submitted,

                                         **C.O. LAW, APC**


                                         By: /s/ Clark Ovruchesky
                                         CLARK OVRUCHESKY, ESQ.
                                         ATTORNEY FOR PLAINTIFF

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MIGUEL SEPULVEDA SR. | AMERIMARK DIRECT, LLC, FIRST SAVINGS CREDIT CARD, ARMY AND AIR FORCE EXCHANGE SERVICE, and EXPERIAN |
| **(b)** County of Residence of First Listed Plaintiff    SAN DIEGO<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>C.O. LAW, APC; (619) 356-8960, 2404 Broadway, Suite 150, San Diego, CA 92102. | Attorneys *(If Known)*<br>'19CV0585 L    AGS |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government    Plaintiff

☒ 3   Federal Question      *(U.S. Government Not a Party)*

☐ 2   U.S. Government    Defendant

☐ 4   Diversity      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding    ☐ 2   Removed from State Court    ☐ 3   Remanded from Appellate Court    ☐ 4   Reinstated or Reopened    ☐ 5   Transferred from Another District *(specify)*    ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1681 et seq and 28 U.S.C. § 1367

Brief description of cause:
Violations of the FCRA and CCRAA by Defendants

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $   $100,000    CHECK YES only if demanded in complaint:

JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    03/29/2019

SIGNATURE OF ATTORNEY OF RECORD    /s/ Clark Ovruchesky, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.